**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: K.T. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1245 WDA 2021 |

Appeal from the Order Entered October 13, 2021
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-AP-0000197-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: K.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: ALLEGHENY COUNTY CHILDREN, YOUTH AND FAMILIES | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1279 WDA 2021 |

Appeal from the Order Entered October 13, 2021
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-AP-0000197-2019

BEFORE:   MURRAY, J., McCAFFERY, J., and COLINS, J.*

DISSENTING MEMORANDUM BY MURRAY, J.:       **FILED: JUNE 2, 2022**

I agree with the Majority that we cannot reweigh the evidence. However, I respectfully dissent because I would conclude the trial court erred in conducting its needs and welfare analysis under 23 Pa.C.S.A. § 2511(b).

---

* Retired Senior Judge assigned to the Superior Court.

In determining Child's best interests, the trial court focused exclusively on the bond between Mother and Child. *See* Trial Court Opinion, 11/22/21, at 15 (stating CYF failed to demonstrate termination "would meet the needs and welfare of the Child" where "evidence proved that the Child had an emotional bond with her Mother, and that permanently severing that bond would have a detrimental impact."); *see also id.* at 18 (citing expert testimony of Dr. Rosenblum "regarding the benefit to the [C]hild of maintaining a bond with her Mother [is] evidence that permanently severing that bond would have an adverse effect on the [C]hild.").

In this case, it is undisputed that severance of the parent-child bond would have an adverse effect on Child. However, our Supreme Court has instructed, "Courts **must** determine whether the trauma caused by breaking th[e parent-child] bond is outweighed by the benefit of moving the child toward a permanent home." *In re T.S.M.*, 71 A.3d 251, 253 (Pa. 2013) (emphasis added). While the trial court acknowledged Dr. Rosenblum's expert opinion that termination served Child's needs and welfare,[1] the court nonetheless based its needs and welfare analysis on Child's affection for Mother, as well as Dr. Rosenblum's testimony that severing the bond "would have an adverse effect on the child." Trial Court Opinion, 11/22/21, at 17-

---

[1] Dr. Rosenblum advocated for termination. *See id.* at 7 ("Dr. Rosenblum concluded by saying that he would like to see the relationship between Mother and child continue, but that this benefit does not outweigh the need for the opportunity for the child to move on with her life. (Tr. 2 at 129 and 130)).”

18. Critically, the trial court ignored the legal mandate to consider "the benefit of permanency" in its needs and welfare analysis. *In re T.S.M.*, *supra*.

"Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child **is a factor** to be considered" as part of our analysis. *In re K.K.R.-S.*, 958 A.2d 529, 533 (Pa. Super. 2008) (emphasis added).

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless **only one of many factors** to be considered by the court when determining what is in the best interest of the child. **The mere existence of an emotional bond does not preclude the termination of parental rights**. Rather, the orphans' court must examine the status of the bond to determine whether its termination would destroy an existing, necessary and beneficial relationship[.]

*In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (citations omitted, emphasis added).

> This Court has opined,

> concluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent[.] **Nor are we of the opinion that the biological connection between [the parent] and the child[] is sufficient in and of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists.** The psychological aspect of parenthood is more important in terms of the development of the child and [] mental

and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.S.*, 958 A.2d at 535 (citations omitted, emphasis added). As stated above, "Courts must determine whether the trauma caused by breaking that bond is outweighed by the benefit of moving the child toward a permanent home." *In re T.S.M.*, 71 A.3d at 253 (referencing "the challenges facing the foster care system when children have understandably strong, even if unhealthy, bonds to biological parents who have proven incapable of parenting.").

In addition to the parental bond, the trial court must "also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015). Our Supreme Court has emphasized: "**Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents.**" *In re T.S.M.*, 71 A.3d at 269 (emphasis added). "[A] child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006).[2]

---

[2] CYF presented ample evidence with respect to permanency. For example, the CYF caseworker, Ms. McCoy, testified Child was born "drug exposed" in

Consistent with the foregoing legal authority, I would conclude the trial court made an error of law in ignoring Child's need for permanency in determining that termination did not serve Child's needs and welfare. Therefore, I respectfully dissent.

_____

June 2016, was removed from Mother's care in March 2017, and was placed with her godmother, N.P., in June 2017. N.T., 3/22/21, at 14-15, 28. The trial court changed Child's goal to adoption on August 12, 2019. Ms. McCloy described Child's placement with N.P. as follows:

> That is the home [Child] knows as her home being that she's been there for as far as she can remember[.] She was about a year old when she was placed there. She has a good relationship with the foster parents' children and she has, you know, space of her own and she does well there.

*Id.* at 128-29.

Dr. Rosenblum conducted multiple individual and interactional evaluations between Mother, Child and N.P. As the Majority recognizes, **Dr. Rosenblum testified Mother likely would never be capable of providing a safe and secure home for Child**. Majority at 8 n.5 (quoting Dr. Rosenblum saying, "I believe the die [*sic*] has been cast," he did not "see a very favorable prognosis" for Mother, and "I believe for this child, the train left the station quite some time ago."). Dr. Rosenblum also testified "unequivocally that Child's strong, primary attachment is to her foster mother; foster mother's home is the only home Child can remember, she thrives under her foster mother's care, and she would experience significant trauma if she were removed from the foster home. Dr. Rosenblum opined Child's primary attachment is to N.P., with whom she has lived almost her entire life." *Id.* at 9.